**CARSON HARBOR VILLAGE, LTD., a limited partnership, dba Carson Harbor Village Mobilehome Park, Plaintiff,**

v.

**UNOCAL CORPORATION, a Delaware corporation; Carson Harbor Village Mobile Home Park, a California general partnership; Richard G. Braley; Walter Smith, Jr.; James W. Van Loben Sels, in his capacity as Director of the California Department of Transportation; County of Los Angeles; City of Compton; City of Carson, Defendants.**

No. CV–96–3281 KMW (VAPx).

United States District Court,
C.D. California.

Nov. 4, 1997.

Douglas L. Carden, Shapiro Rosenfeld & Close, Los Angeles, CA, for plaintiff Carson Harbor Village Ltd.

Charles A. Jordan, Holley & Galen, Los Angeles, CA, for defendant Unocal Corporation.

Walter J. Lipsman, Morris Polich & Purdy, Los Angeles, CA, for defendants Carson Harbor Village Mobile Home Park, Richard Braley, Walter Smith.

Linda Cohen Harrel, Dept. of Transp., Legal Div., Los Angeles, CA, for defendants State of California, Department of Transportation, James W. Van Loben Sels.

Gary Yardumian, Prindle Decker & Amaro, Long Beach, CA, DeWitt W. Clinton, Los Angeles County Counsel, Los Angeles, CA, for defendant County of Los Angeles.

Martin N. Refkin, Gallagher & Gallagher, Los Angeles, CA, for defendant City of Compton.

John J. Harris, Richards Watson & Gershon, Los Angeles, CA, for defendant City of Carson.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN PART AND DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF THE ISSUES

WARDLAW, District Judge.

This is a suit brought by a property owner for reimbursement of costs incurred removing hazardous materials from the property. The current owner seeks reimbursement from previous owners, tenants, and nearby governmental entities asserting liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, and common law claims of nuisance, trespass, injury to easement, indemnity, and negligent nondisclosure.[1]

Having considered all the papers and records filed in support and opposition to these motions, and the oral argument of counsel, the Court hereby **GRANTS** the summary judgment motions of all the defendants, except with respect to certain state law claims asserted against defendant Unocal. Plaintiff's CERCLA claims fail because no admissible evidence has been offered to support a finding that the removal was necessary as required by that statute. With regard to plaintiff's RCRA claims, no admissible evidence has been offered to support a finding that there existed an imminent danger to human health or the environment as required by the statute. Finally, plaintiff has failed to

---

1. The parties stipulated to dismiss plaintiff's eighth cause of action for negligent nondisclosure.

offer admissible evidence that defendants are in violation of an NPDES permit, as required to find violation of the CWA.

For these reasons, elaborated upon below, plaintiff's motion for summary adjudication is **DENIED.**

## I. BACKGROUND

On May 7, 1996, Plaintiff Carson Harbor Village, Ltd. ("Carson Harbor") filed this environmental lawsuit, alleging that defendants disposed of or currently are disposing of hazardous substances upon a 70 acre parcel of land it owns in Carson, California (the "Property"). First Amended Complaint ("FAC") ¶ 23. The Property was previously owned by defendant Carson Harbor Village Mobile Home Park, a general partnership controlled by defendants Richard G. Braley and Walker Smith Jr. (collectively the "Partnership Defendants."). Defendant Unocal Corporation ("Unocal") held a leasehold interest in the Property from 1945 until 1983. FAC ¶ 25. In 1994, plaintiff discovered "tar-like" and "slag" materials which it alleges were dumped on the Property by Unocal. FAC ¶¶ 27–28. Plaintiff's causes of action arise from the costs associated with the removal of the tar-like and slag materials.

The majority of the Property is developed and used as a mobile home park. Approximately 17 acres of the Property are an undeveloped open flow wetlands area (the "wetlands") and natural drainage course which bisects the trailer park from the northeast to the southwest. FAC ¶ 26. The drainage area upstream from plaintiff's Property contains a mix of industrial and residential properties located within the City of Carson ("Carson"), City of Compton ("Compton") and certain unincorporated areas within the County of Los Angeles ("Los Angeles") (collectively the "Government Defendants"). In addition, California Highway 91 (the Artesia Freeway), operated by the California Department of Transportation ("Caltrans"),[2] is located upstream from the Property. Storm water runs from the Property controlled by the Government Defendants and Caltrans into the Wetlands. FAC ¶ 26. Plaintiff's principle contention against the Government

Defendants and Caltrans is that dangerous levels of lead within the storm water runoff may have contributed either to (1) the lead found within the tar-like and slag materials or (2) lead levels outside the tar-like and slag materials.

Plaintiff discovered the hazardous materials on the Property during the process of refinancing the Property in 1993. The prospective lender inspected the Property and discovered the tar-like and slag materials. Plaintiff reported the findings of the hazardous materials to the Regional Water Quality Control Board ("RWQCB") and undertook to have the tar-like and slag materials removed. In July of 1995 the materials were removed from the property.

## II. LEGAL STANDARD

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A party opposing summary judgment has an affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence ... will be insufficient." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Hopkins v. Andaya,* 958 F.2d 881, 885 (9th Cir.1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Evidence offered in support of or opposition to a motion for summary judgment must be admissible. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir.1989).

---

**2.** James W. van Loben Sels is named as a defendant in this action in his capacity as Director of Caltrans. Defendant van Loben Sels will be referred to as either "van Loben Sels" or "Caltrans."

## III. ANALYSIS

### A. The CERCLA Claims

Plaintiff asserts claims under CERCLA against all defendants except van Loben Sels. These claims fail as to each because plaintiff has failed to meet its burden on summary judgment as to a key element of proof under CERCLA. Specifically, CERCLA requires that every action brought under its name must be "necessary" within the meaning of the statute. 42 U.S.C. § 9607(a).[3]

#### 1. Plaintiff's Evidence that the Removal was 'Necessary' is Insufficient

■ Remediation costs are "necessary" and thus recoverable under CERCLA when undertaken in response to an actual and real threat to human health or the environment. *G.J. Leasing Co. Inc. v. Union Electric Co.*, 854 F.Supp. 539, 562 (S.D.Ill.1994). "To be necessary under CERCLA [plaintiff] must establish that an actual and real threat exists prior to initiating a response action. Where the conditions at a site do not pose any plausible threat to the environment, the response cannot be deemed necessary, and recovery must be denied." *Yellow Freight System, Inc. v. ACF Industries, Inc.*, 909 F.Supp. 1290 (E.D.Mo.1995).

■ Plaintiff's focus on whether a party may recover for voluntary removal efforts misses the mark. A party may recover for voluntary removal efforts such as this one. CERCLA, however, was not designed to permit property owners to clean up their property unnecessarily for business reasons, and then to shift the costs to prior owners. *G.J. Leasing Co. Inc. v. Union Elec. Co.*, 54 F.3d

379, 386 (7th Cir.1995). The law requires that property owners ensure that an actual threat exists before undertaking remediation efforts. *Id.* In other words, while costs associated with voluntary remediation efforts are recoverable, plaintiff bears the burden of proving that this voluntary effort in particular was necessary at the time it was undertaken.

■ Plaintiff has not met this burden. The only admissible evidence is in fact to the contrary. James Ross, the RWQCB Director at the time of the removal and the person responsible for deciding whether the RWQCB would order cleanup, testified in deposition that plaintiff voluntarily proposed the removal. Ross further testified that had plaintiff not voluntarily proposed the cleanup, he would not have ordered remediation since the materials did not pose a health problem or a threat to the environment:

Q: If the owners had not come to you with a remediation plan, if they had simply reported to you that this is what they see here, would you have required then to develop some remediation plan?

A: Not likely.

Q: As far as you were concerned, this stuff, even the slag and tar-like material, could have just stayed there?

A: Very likely.

Q: So then, basically, this remediation was done at their initiative for their own reason and not because of any environmental or health problem that was perceived by the Regional Board?

A: Yes.

Ross Depo. 159:13–160:1.[4]

■ Plaintiff next relies upon flawed health risk assessments performed years af-

---

3. The elements of a private cost recovery claim under CERCLA Sections 107(a) and 113(f) are:

(1) a "facility" containing hazardous substances;

(2) a release or threatened release from the facility has occurred;

(3) the defendant is within one of the four statutory classes of persons subject to liability; and

(4) response costs were incurred, which were

(5) necessary and consistent with the National Contingency Plan.

*3550 Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355 (9th Cir.1990); *Long Beach Unified School District v. Dorothy B. Godwin California Living Trust*, 32 F.3d 1364 (9th Cir.1994).

4. In support of its argument that the remediation was necessary, plaintiff urges the Court to find that Mr. Ross had ordered it to undertake its effort. The evidence that Mr. Ross ordered the remediation comes in the form of the hearsay testimony of two witnesses. Both witnesses state that Mr. Ross told them that the plaintiff was required to perform the cleanup. Amini Depo., 108:25–109:1; Salisbury Depo., Ex. 232. Plaintiff claims this is not hearsay because it is an act of independent significance. The relevant question, however, is whether an actual and real threat existed at the time of the removal, not whether Mr. Ross ordered removal. To the extent plaintiff's experts characterize Mr. Ross's

ter the removal took place to prove a threat existed at the time of removal. Carden Decl., Exs. U, V. This evidence is insufficient for two reasons. First, it was performed after the remediation had occurred. CERCLA requires that a determination be made that a threat exists before remediation for it to be considered necessary. *Yellow Freight System, Inc. v. ACF Industries, Inc.*, 909 F.Supp. 1290 (E.D.Mo.1995). Second, and more significantly, the health risk assessments to which the plaintiff points do not support the conclusion that a threat existed. The reports to which plaintiff looks for support deal with lead in the soil, not the tar-like and slag materials. In addition, the reports do not actually find an existing health risk. Both reports conclude that "a risk management decision should be made by the appropriate agency." This is insufficient evidence to support a finding that a threat existed at the time of the remediation. Without such evidence, plaintiff cannot show that the remediation was necessary within the meaning of CERCLA.

### 2. Alternate Basis for Summary Judgment on the CERCLA Claims

The Partnership Defendants are entitled to summary judgment also because the plaintiff has adduced insufficient evidence that the Partnership Defendants are potentially responsible parties, a critical element of any CERCLA claim.

Potentially responsible parties under CERCLA include: (1) the current owner or operator of the facility; (2) the owner or operator of a facility at the time hazardous substances were disposed; (3) parties who arrange for the treatment or disposal of hazardous substances; and (4) parties who arrange for transport of hazardous substances to a treatment or disposal facility. 42 U.S.C. § 9607(a)(1)–(4). Plaintiff alleges that the Partnership Defendants were owners of the facility at the time hazardous materials were disposed.

The Partnership Defendants purchased the Property in September 1977, and sold it to the plaintiff in April 1983. To prevail, plaintiff must demonstrate disposal of the hazardous materials on the property during the period between September 1977 and April 1983 when the Partnership Defendants owned the property. Since it is undisputed that the Partnership Defendants were owners of the property, the critical issue is whether hazardous materials were "disposed of" within the meaning of the statute.

Plaintiff's only evidence on this point shows that the tar-like and slag material was deposited before 1947. Therefore, the Partnership Defendants cannot be a potentially responsible party for those deposits. Plaintiff attempts to sidestep this point by urging that the Partnership Defendants are potentially responsible parties because: lead from the tar-like and slag materials leaked into the surrounding soil and lead from the storm water runoff leaked into the property during the time that they were owners. Plaintiff theorizes it need only demonstrate "passive migration" of a hazardous substance to prove "disposal," relying on a Fourth Circuit decision, *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir.1992), which held that a landowner disposes of hazardous materials under section 9607(a) when he passively allows the material to migrate into the environment.

The Ninth Circuit has noted—but not decided—the passive migration issue. *Kaiser Aluminum v. Catellus Development*, 976 F.2d 1338, 1342 n. 7 (9th Cir.1992). Other circuits have criticized *Nurad's* interpretation of CERCLA. For example, the Third Circuit has held that mere "passive migration" during a prior owner's tenure does not constitute a "disposal" under CERCLA. *U.S. v. CDMG Realty*, 96 F.3d 706, 714 (3rd Cir.1996). The *CDMG* court looked to the statutory definition of "disposal," which is "the discharge, deposit, injection, dumping,

statement as essentially saying an actual threat existed—the only issue to which the statement is relevant—,that testimony is textbook hearsay because it is an out-of-court statement offered for its truth. Moreover, the testimony of these witnesses lacks the indicia of reliability that might make it admissible under the catch-all exception

to the hearsay rule. The testimony purports to be evidence of what Mr. Ross said. It is in direct conflict, however, with Mr. Ross's own testimony under oath. Since only admissible evidence may be considered on a motion for summary judgment, this evidence must be disregarded.

spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water." 42 U.S.C. §§ 6903(3), 9601(29). It found that these seven words all implied active human participation. *CDMG*, 96 F.3d at 714. A district court in this circuit has also found that CERCLA was not so broad as to impose liability for passive migration. *Ecodyne Corp. v. Shah*, 718 F.Supp. 1454, 1457 (N.D.Cal.1989). That court noted, "[t]o define disposal as plaintiff wishes would effectively make all property owners from the time a site became polluted (up to and including the current owner) potentially liable under § 9607(a)(2) even if these owners did not introduce chemicals onto the site. Such a construction conflicts with the limited scope of § 9607(a)(2)." *Id.*

 This Court finds persuasive the reasoning of the courts that have rejected the passive migration theory. While CERCLA was intended to reach broadly, it also clearly expresses limits to the contemplated statutory liability. To find otherwise would subject previous owners who had no knowledge of or control over hazardous substances on their property to liability under the statute. This result is in stark conflict with the intent of CERCLA, which is to affix the ultimate cost of cleaning up disposal sites on the parties responsible for the contamination. *Kaiser Aluminum v. Catellus Development*, 976 F.2d 1338, 1340 (9th Cir.1992). Therefore, this Court, adopting the view of the Third Circuit, holds that disposal warranting CERCLA liability requires a showing that hazardous substances were affirmatively introduced into the environment. Without the aid of the passive migration theory, plaintiff's claim that the Partnership defendants were owners of the facility at the time of disposal fails as a matter of law.

 With respect to the storm water runoff, plaintiff has similarly failed to present evidence sufficient to defeat a motion for summary judgment by the Partnership defendants. Plaintiff's argument for this proposition is based on two points: (1) a request that the Court take judicial notice of the fact that it rained sufficiently between 1977 and 1983 to create storm water runoff; and (2) lead is found in significant quantities in storm water runoff. Plaintiff's Opposition, 9:19–10:3. The Partnership Defendants concede that between 1977 and 1983 it probably rained enough to create storm water runoff. The Partnership Defendants also concede that storm water runoff tested currently may contain lead. The Partnership Defendants correctly argue, however, that evidence of the condition of the storm water today is inadequate to prove CERCLA liability against the Partnership Defendants for their status as owners of the property from 1977 until 1983. To establish CERCLA liability, plaintiff must show that storm water traveled through the wetlands before 1983 and that it contained lead. Plaintiff has not produced any such evidence. Plaintiff has admitted that it does not know when the storm water drainage system was constructed. Plaintiff's Supplemental Response to Interrogatory No. 4. Further, plaintiff has not offered any evidence that if storm water did run through the property prior to 1983, it contained lead.

## B. The RCRA Claims

### 1. Legal Standard.

The RCRA regulates the disposal of hazardous and solid wastes. It permits private parties to bring suit against "any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Plaintiff seeks injunctive relief, authorized by section 6972(a), against the Government Defendants and van Loben Sels in his official capacity as Director of Caltrans. Section 6972(a) allows a court to "restrain any person who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" and may "order such person to take such other action as may be necessary." 42 U.S.C. § 6972(a).

 To obtain injunctive relief, a plaintiff must establish: (1) that the conditions at the site may present an imminent and substantial endangerment; (2) that the endangerment stems from the handling, storage,

treatment, transportation or disposal of any hazardous or solid waste; and (3) that the defendant has contributed or is contributing to such handling, storage, treatment, transportation or disposal. *Lincoln Properties Ltd. v. Higgins,* 1993 WL 217429, 36 ERC 1228 (E.D.Cal.1993).

## 2. Discussion

### 1. *Imminent and Substantial Danger*

■ The United States Supreme Court recently addressed this particular requirement of RCRA:

> The meaning of this timing restriction is plain: An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately,' and the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger.

*Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 116 S.Ct. 1251, 1255, 134 L.Ed.2d 121 (1996) (citations omitted).

■ Here, evidence shows that there was no imminent danger. As discussed *supra* at 5:17–6:16, plaintiff removed the materials voluntarily and not because of any environmental or health problem. The RWQCB was aware of the remaining levels of lead in the wetlands after the removal and did not require that it be cleaned up. Indeed, on October 18, 1995, the RWQCB issued a "no further action" letter to the plaintiff, at the plaintiff's request, stating,

> [t]he contamination has been successfully removed and the remaining soil in the bottom of the water course poses no further threat to surface waters of the State. We, therefore, conclude that no further action is required at this site.

Ross Depo, 130:10–16, Exhibit 38 to Ross Depo.

Plaintiff nevertheless argues that there was an imminent and substantial threat. First, it argues that a more expansive definition of "imminent" ought to be considered, erroneously relying on an unpublished district court decision *Lincoln Properties, Ltd. v. Higgins,* 1993 WL 217429 (E.D.Cal.1993), rendered before the Supreme Court's *Meghrig* decision. Next, plaintiff argues that

the no action letter should be narrowly read. Plaintiff contends that Ross, the letter's author, testified in deposition that the no action letter should be limited to the portions of the wetlands that was remediated. Ross's deposition testimony, however, supports the Government Defendants' contention that the letter meant that there was no further danger to human life:

> Q: [I]n issuing this letter, did you determine ... that this property was clean and did not pose a threat to human health?
> A: Did I say that in this letter?
> Q: I'm asking you if you made that determination in issuing the letter.
> A: I probably did, yes.

Ross Depo, 131:15–25.

For these reasons, it is apparent that at the time the suit was filed, there was no imminent danger on the property. Plaintiff has failed to satisfy a critical element of its RCRA claim. Therefore, Government Defendants and van Loben Sels are entitled to summary judgment on the RCRA claims.

## C. The CWA Claims

### 1. Legal Standard

Plaintiff alleges violation of the CWA by the Government Defendants and van Loben Sels in his capacity as Director of Caltrans. To state a claim for relief under the citizen suit provision of the CWA, the plaintiff must allege that the defendant is in violation of an effluent standard or limitation under CWA or an order issued by the administrator or a State. 33 U.S.C. § 1365. To prove its cause of action for violation of the CWA, therefore, plaintiff must prove that the Government Defendants discharged pollutants in violation of the 1990 or 1996 National Pollutant Discharge Elimination System "NPDES" permits.

### 2. Discussion

It is undisputed that the Government Defendants were issued a NPDES permit allowing the discharge of storm water containing pollutants in 1990 pursuant to the CWA. The permit was issued by the RWQCB pursuant to its delegated authority from the State Water Quality Control Board and Congress,[5]

---

5. The Cologne Water Quality Act, California Water Code Sections 13,000 *et seq.,* established the

California State Water Resources Control Board

to the County of Los Angeles, as principle permittee and 85 municipalities within the Los Angeles County as co-permittees, on June 18, 1990. In 1996, a second NPDES permit was issued by the RWQCB for the Government Defendants. Plaintiff does not dispute the issuance or validity of these permits; rather plaintiff argues that the Government Defendants failed to comply with the permits and therefore are in violation of the CWA.

■ Paragraph 3.1.2 of the 1990 Permit requires the Government Defendants to implement a plan of best management practices to "control pollutants from residential, commercial and industrial sites to the maximum extent practicable." Hildbrand Decl., Ex. F. This provision was incorporated by reference into the 1996 permit. Plaintiff's expert, Robert Ghirelli, the former executive officer of the RWQCB, argues that best management practice under the permits would be to conduct a water quality monitoring program and implement appropriate control measures based on the results of the monitoring. Ghirelli Decl. ¶¶ 4–5. Ghirelli, however, acknowledged that all of the Government Defendants were in compliance with the 1990 permit and expressed no opinion with regard to the 1996 permit. Further, there is no indication that either the 1990 or 1996 permits required site specific monitoring. Indeed, Ghirelli noted that not all of the best management practices identified in his report must be implemented by each city subject to the permits. Plaintiff's evidence thus falls considerably short of meeting its burden on summary judgment that the Government Defendants violated either the 1990 or 1996 permits.

### D. State Law Claims

In addition to the three federal causes of action, plaintiff has brought five state law causes of action against various defendants. Plaintiff's fourth and fifth causes of action are claims for nuisance and trespass against the Government Defendants and Unocal. Plaintiff's sixth cause of action is for injury to easement against the Government Defendants. Plaintiff's seventh cause of action is

and the system of nine regional water quality control boards. The state and regional boards implement California and Federal law pertaining

for express indemnity against the Partnership Defendants.

### 1. The Government Defendants

■ California Civil Code Section 3482 precludes the state law claims against the Government Defendants. Section 3482 provides that nothing which is done under the express authority of a statute can be deemed a nuisance. The NPDES permits in 1990 and 1996 were issued pursuant to the statutory authority granted to the RWQCB. Because plaintiff has not shown that the Government Defendants failed to comply with the permits, *see supra* at 12:11–13:1, any pollutants discharged into the storm water were allowed pursuant to the authority of the state.

In *Jordan v. City of Santa Barbara*, 46 Cal.App.4th 1245, 54 Cal.Rptr.2d 340 (1996), the court held that California Civil Code section 3482 precluded liability for nuisance, trespass or for downstream effects of waste water discharge resulting from operation of a waste management facility pursuant to a valid NPDES permit. Similarly, in this case, pollutants entering the storm drain under the maintenance of the Government Defendants were authorized by an NPDES permit issued by the RWQCB. The Government Defendants thus are entitled to judgment on plaintiff's state law claims.

### 2. Unocal

Plaintiff's fourth and fifth causes of action for trespass and nuisance include Unocal as a potential defendant. Since Unocal is not protected by an NPDES permit or California Civil Code Section 3482, claims against it are considered separately.

#### a. Nuisance

■ California Civil Code Section 3479 provides that "[a]nything which is injurious to health ... or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, ... is a nuisance." Unocal concedes that the hazardous material

to water quality, including the NPDES permit system.

might be a nuisance, but argues that it is not liable for nuisance because there is no evidence that it dumped the materials. In other words, Unocal argues that there is no evidence that it caused the nuisance. A party may be liable for nuisance, however, for negligently allowing the materials to be dumped. *Lussier v. San Lorenzo Valley Water District,* 206 Cal.App.3d 92, 101, 253 Cal.Rptr. 470 (1988). Plaintiff has offered evidence that the tar-like and slag materials were deposited before 1947. Unocal held a leasehold on the property from 1945 to 1983. While this a narrow window, the possibility does exist that Unocal negligently allowed the materials to be dumped during this time. Under these circumstances, plaintiff may rely upon the doctrine of *res ipsa loquitur* to establish Unocal's negligence in allowing the material to be dumped. At the least, plaintiff has raised a genuine issue of fact which precludes summary judgment on this claim.

### b. Trespass

█ As with the nuisance claim, plaintiff raises a genuine issue of material fact that precludes summary judgment for Unocal. Unocal's only argument in support of its motion is that plaintiff has not produced any evidence that links Unocal to disposal of the materials. Unocal does not dispute that California law permits the current owner of real property to bring an action for trespass against a defendant who leased the property from a previous owner and who contaminated the property during the term of that leasehold. *Mangini v. Aerojet–General Corp.,* 230 Cal.App.3d 1125, 281 Cal.Rptr. 827 (1991). Unocal argues that despite *Mangini* plaintiff cannot show that Unocal contaminated the property. As described above, plaintiff has raised a genuine issue of material fact on this point.

### 3. The Partnership Defendants

Plaintiff's seventh of action is for express indemnity against the Partnership Defendants.

### a. Express Indemnity

Plaintiff's claim for express indemnity rests on two theories. The first is based on the language of the purchase and sale contract between the plaintiff and the Partnership Defendants signed in 1983. The second is based on the covenants contained in the Deed by which the Partnership Defendants gained control of the property in 1977. They are addressed in turn.

### i. The Purchase and Sale Agreement

The purchase and sale agreement provides in relevant part that the Partnership Defendants agreed to indemnify and hold the plaintiff harmless "from and against any ... damage, cost, expense ... liability ... suffered by Buyer resulting, directly or indirectly, from ... (ii) any liability or obligation of seller which buyer is not specifically required to assume hereunder." Thus, the Partnership Defendants are liable for the damages, costs, and expense plaintiff suffered if plaintiff had to discharge a liability or obligation of the Partnership Defendants.

This agreement was executed in April of 1983. For the Partnership Defendants to be liable, therefore, plaintiff must raise a triable issue of fact supporting Partnership Defendants' obligation to remove the hazardous substances in 1983. Plaintiff asserts that since it was required to remove the hazardous substances in 1995, it is reasonable to infer that the Partnership Defendants would have been required to remove them in 1983. Plaintiff, however, was explicitly *not* required by the RWQCB to remove the hazardous materials in 1995. Therefore, this is an impermissible inference.

Plaintiff next argues that even had the RWQCB not ordered Partnership Defendants to remove the materials, the California Fish and Game Department would have. The section to which Plaintiff cites, however, states that should the Fish and Game Department discover any material it believes should be removed, it is to report such finding to the RWQCB for the determination as to proper corrective action. The RWQCB Director at the time has testified that he would not have ordered any cleanup or removal because there was no threat to human health or the environment. *See supra* at 5:23–6:2.

Therefore, plaintiff has not raised a genuine issue of material fact with regard to the Purchase and Sale Agreement.

#### ii. Covenants in 1977 Grant Deed

 Plaintiff's final contention is that a restriction in the 1977 Grant Deed, through which the Partnership Defendants acquired the Property, created an "obligation" which plaintiff discharged and for which plaintiff is entitled to indemnity under the Purchase and Sale Agreement. Plaintiff's own interpretation of the Grant Deed and the Purchase and Sale Agreement, however, highlights the shortcomings of its argument.

The Grant Deed by which the Partnership Defendants acquired the Property provides in relevant part that the property owner:

(2) Shall not use or permit the use of the subject property for any purpose except as open space consistent with the stated purposes, terms, conditions, restrictions, and covenants of this deed.

(3) Shall not use or allow others to use the subject property or any portion thereof as a ... dump site or otherwise deposit or allow to be deposited on said property or any portion thereof temporarily or otherwise anything whatsoever which is not indigenous or natural to said property.

Plaintiff asserts that it is not attempting to enforce the restrictive covenant. Rather, Plaintiff argues that this restrictive covenant created an obligation which plaintiff was required to fulfill and for which it is entitled to damages under the indemnity agreement. This misinterprets the covenant. Plaintiff concedes that, "[t]he restrictive covenant follows the land and applies to plaintiffs ownership of the Property to the same extent that it applied to the Partnership Defendants' ownership." Opposition, 19:10–12. This admission dooms plaintiff's argument for indemnity under the Purchase Agreement. The Purchase Agreement indemnity clause only extends to liabilities or obligations "which buyer is not specifically required to assume hereunder." Because the 1977 deed restrictions run with the land to successive owners of the property, the obligation was specifically assumed by plaintiff when it took title. Since the indemnity clause includes only those obligations not specifically assumed by plaintiff, the deed restriction cannot give rise to indemnity.

The material facts with regard to plaintiff's claims for indemnity and negligent nondisclo-sure are not in dispute. The Partnership Defendants are entitled to judgment as a matter of law.

### IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** in part Defendants' Motions for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Adjudication of the Issues. The sole claims remaining to be resolved are state law claims for nuisance and trespass against Unocal. The Court orders Plaintiff to show cause on or before December 8, 1997, why the remaining claims should not be dismissed for lack of subject matter jurisdiction. Defendant Unocal may respond in writing on or before December 12, 1997.